UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

WILLIAM THOMPSON,

                Petitioner,

v.

RON HAYNES,

                Respondent.

Case No. C21-5342-BJR-SKV

REPORT AND RECOMMENDATION

INTRODUCTION AND SUMMARY CONCLUSION

Petitioner William Thompson is a state prisoner who is currently confined at the Stafford Creek Corrections Center ("SCCC") in Aberdeen, Washington. He has filed, through counsel, a petition for writ of habeas corpus under 28 U.S.C. § 2254 seeking relief from his 2018 Kitsap County Superior Court judgment and sentence. Dkts. 3, 4. Respondent has filed an answer to the petition and has submitted relevant portions of the state court record. Dkts. 7, 8. Petitioner has filed a response to Respondent's answer. Dkt. 9. This Court, having reviewed Petitioner's

REPORT AND RECOMMENDATION
PAGE - 1

amended petition[1], all briefing of the parties, and the balance of the record, concludes that Petitioner's amended petition for writ of habeas corpus should be denied and this action should be dismissed with prejudice.

## FACTUAL BACKGROUND

The Washington Court of Appeals, on direct appeal, summarized the facts underlying Petitioner's conviction as follows:

> M.T. was born in . . . and is the daughter of William Thompson. M.T. began living with Thompson when she was five or six years old. At that time, Thompson and M.T.'s mother were divorced and Thompson had married Elizabeth [footnote omitted] Thompson, who has three children from previous relationships. M.T. lived with Thompson and Elizabeth's family until shortly after she turned 18, when she moved out to live with her mother.
>
> A few months after M.T. moved out, her grandmother died and she sought support from a school counselor she trusted. She told the counselor that she was struggling to focus, that she was really upset about her grandma's death and that it brought back the nightmares. When the counselor asked, "What nightmares?" she said "the nightmares of when my father used to rape me." The counselor then told her he was required by law to report this to the principal. The school called the police.
>
> Two detectives interviewed M.T. and she described what happened to her. To corroborate her story, the detectives sought a wire intercept order to record conversations between M.T. and Thompson. M.T. then arranged to speak with Thompson while their conversation was recorded. [Court's footnote: The substance of that conversation is not part of the record on appeal. Neither party designated the exhibits containing the recording and transcript of the conversation.]
>
> The State charged Thompson with one count of second degree rape of a child and four counts of first degree incest. All of the charges included special allegations of domestic violence and aggravating circumstances of ongoing pattern of sexual abuse and the defendant holding a position of trust relative to the victim.

---

[1] The Court declined to serve Petitioner's original petition because the petition did not name a proper respondent, and because it was signed only by Petitioner's counsel and counsel failed to provide proper verification of the petition as required by LCR 100(e). *See* Dkts. 1, 2. Petitioner thereafter filed an amended petition correcting these deficiencies, and the amended petition is the operative petition in this action. Dkt. 3.

Before trial, Thompson moved to suppress evidence of the recorded conversation with M.T. The trial court denied the motion.

At trial, M.T. testified that before her 13th birthday Thompson raped her for the first time. No one was home at the time. M.T. was upstairs watching television when Thompson called her down to his room and said he was going to "do some things to [her]" and that she could not tell anyone. He then proceeded to fondle her breasts, digitally penetrate her and vaginally rape her. Afterward he gave her a towel to clean up and told her to go to the bathroom.

M.T. testified to another incident where Thompson raped her in the shower. She also testified in detail to two other separate incidents where Thompson made her have oral sex with him. M.T. further testified that these were not the only incidents. She said sometimes it would happen once a week, sometimes nothing would happen for a couple of months and then it would start again, and sometimes it would happen a couple times a week.

The jury was instructed that, on count 1, second degree rape of a child, the State must prove beyond a reasonable doubt "[t]hat on or between February 1, 2011 and February 6, 2012, the defendant had sexual intercourse with [M.T.]." The jury was further instructed:

> In alleging that the defendant committed Rape of a Child in the Second Degree as charged in Count I, the State relies upon evidence regarding a single act constituting the alleged crime. To convict the defendant, you must unanimously agree that this specific act was proved.

On count 2, first degree incest, the jury was instructed the State must prove beyond a reasonable doubt "[t]hat on or between February 1, 2011 and February 7, 2012, the defendant engaged in sexual intercourse with [M.T.]" For each of the three remaining counts of first degree incest, the "to convict" instructions were identical, instructing the jury that the State must prove beyond a reasonable doubt "[t]hat on or between February 1, 2011 and February 7, 2016, the defendant engaged in sexual intercourse with [M.T.]." The jury was further instructed that for each of the four counts of first degree incest, "the State relies upon evidence regarding a single act constituting the allege [sic] crime. To convict the defendant, you must unanimously agree that this specific act was proved."

The jury found Thompson guilty as charged. The trial court sentenced him to 280 months confinement, the high end of the standard range. The trial court also imposed community custody conditions prohibiting him from contacting M.T. or her family and prohibiting him from possessing or accessing "sexually explicit materials" and "sexually exploitive materials." Thompson appeals.

>   Thompson also filed a pro se CrR 7.8 motion in the trial court that was transferred to this court as a personal restraint petition. He later filed a pro se habeas corpus petition in the Washington Supreme Court that was transferred to this court as a personal restraint petition. Both personal restraint petitions have been consolidated with this appeal.

Dkt. 8, Ex. 2 at 2-4.

## PROCEDURAL BACKGROUND

Petitioner sought both direct and collateral review of his convictions and sentence in the Washington Court of Appeals. *See* Dkt. 8, Exs. 3-8. Among the issues presented to the Court of Appeals for review was that the trial court failed to provide clear instruction to the jury that it could not convict Petitioner of multiple counts based on a single act, and thereby subjected him to double jeopardy. *Id*., Ex. 3 at 11-22. On June 8, 2020, the Court of Appeals issued an unpublished opinion in which it affirmed Petitioner's judgment and sentence but remanded the matter to the trial court for modification of one of the conditions of Petitioner's community custody. *Id*., Ex. 2 at 1-2.

Petitioner thereafter filed a petition for review with the Washington Supreme Court. *Id*., Ex. 15. Petitioner identified the following issue for review:

>   Thompson was convicted of four counts of first degree incest. Each count contained identical charging language and an identical charging period. The jury instructions did not state that a separate act was required for each count. Is review appropriate under RAP 13.4(b)(3) where the Court of Appeals decision concluding there was no double jeopardy violation violates Thompson's right to be free from double jeopardy and implicates issues of constitutional significance?

*Id*., Ex. 15 at 1.

REPORT AND RECOMMENDATION
PAGE - 4

The Supreme Court denied Petitioner's petition for review without comment on November 4, 2020. *Id.*, Ex. 16. The Washington Court of Appeals issued the mandate on November 12, 2020. *Id.*, Ex. 17. Petitioner now seeks federal habeas review of his convictions.

## GROUND FOR RELIEF

Petitioner identifies a single ground for relief in his federal habeas petition:

> **GROUND ONE:** Three of the four counts of first degree incest violated Petitioner's right to avoid Double Jeopardy because the court's jury instructions did not state that a separate and distinct act was required for each count of incest in the first degree.

Dkt. 3 at 5.

## DISCUSSION

Respondent concedes that Petitioner properly exhausted his state court remedies by fairly presenting his single ground for federal habeas relief to the Washington Supreme Court as a federal claim. Dkt. 7 at 5. Respondent argues, however, that Petitioner is not entitled to relief under 28 U.S.C. § 2254(d) because the state courts reasonably rejected Petitioner's claim on direct appeal. *See id.* at 10-15.

### Standard of Review

Federal habeas corpus relief is available only to a person "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A habeas corpus petition may be granted with respect to any claim adjudicated on the merits in state court only if the state court's decision was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court, or if the decision was

REPORT AND RECOMMENDATION
PAGE - 5

based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d).

Under the "contrary to" clause, a federal habeas court may grant the writ only if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *See Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). Under the "unreasonable application" clause, a federal habeas court may grant the writ only if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case. *See id*. at 407-09.

The Supreme Court has made clear that a state court's decision may be overturned only if the application is "objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003). The Supreme Court has also explained that "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

Clearly established federal law means "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." *Lockyer*, 538 U.S. at 71-72. "If no Supreme Court precedent creates clearly established federal law relating to the legal issue the habeas petitioner raised in state court, the state court's decision cannot be contrary to or an unreasonable application of clearly established federal law." *Brewer v. Hall*, 378 F.3d 952, 955 (9th Cir. 2004) (citing *Dows v. Wood*, 211 F.3d 480, 485-86 (9th Cir. 2000)).

REPORT AND RECOMMENDATION
PAGE - 6

In considering a habeas petition, this Court's review "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181-82 (2011). If a habeas petitioner challenges the determination of a factual issue by a state court, such determination shall be presumed correct, and the applicant has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

## Double Jeopardy

Petitioner asserts that he was deprived of his right to avoid double jeopardy by the trial court's failure to instruct the jury that a separate and distinct act was required to support each of four charged counts of incest in the first degree. Dkt. 3 at 5; Dkt. 4 at 13-17.

The Fifth Amendment to the United States Constitution guarantees that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. Amend V. The Double Jeopardy Clause protects against three distinct abuses: a second prosecution for the same offense after conviction, a second prosecution for the same offense after acquittal, and multiple punishments for the same offense. *Schiro v. Farley*, 510 U.S. 222, 229 (1994) (citing *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969)). Where multiple punishments are imposed in a single criminal trial, the role of the Double Jeopardy Clause "is limited to assuring that the court does not exceed its legislative authorization by imposing multiple punishments for the same offense." *Brown v. Ohio*, 432 U.S. 161, 165 (1977) (citing *Gore v. United States*, 357 U.S. 386 (1958); *Bell v. United States*, 349 U.S. 81 (1955); *and Ex parte Lange*, 18 Wall 163 (1874)). *See also*, *Missouri v. Hunter*, 459 U.S. 359, 366 (1983) ("With respect to cumulative sentences

imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended.")

Petitioner's double jeopardy claim arises out of the jury instructions given at trial which, according to Petitioner, were deficient because they failed to make clear that the jury could not convict him of multiple counts of first-degree incest based on a single act. Petitioner maintains that the instructions, which indicated the State was relying on evidence of a single act constituting the alleged crime and not a separate and distinct act as to each count, "left open the possibility that the jurors would unanimously agree to one act of incest and would rely on that one act to support each of the four counts." Dkt. 3 at 5.

Before a federal habeas court can overturn a state court conviction based upon an alleged instructional error, a petitioner must demonstrate that the alleged error violated a right guaranteed by the Constitution. *Cupp v. Naughten*, 414 U.S. 141, 146 (1973). A challenged instruction must be considered in the context of the instructions as a whole and the trial record. *Estelle v. McGuire*, 502 U.S. 62, 72 (1991) (citing *Cupp*, 414 U.S. at 147.) The proper inquiry in reviewing ambiguous jury instructions is "'whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way' that violates the Constitution." *Id*. (quoting *Boyde v. California*, 494 U.S. 370, 380 (1990)). Where a challenge involves the failure to give an instruction, the burden of demonstrating that an instructional error was so prejudicial that it will support a collateral attack on the constitutional validity of a state court judgment is "especially heavy" because "[a]n omission, or an incomplete instruction is less likely to be prejudicial than a misstatement of the law." *Henderson v. Kibbe*, 431 U.S. 145, 154-55 (1977).

REPORT AND RECOMMENDATION
PAGE - 8

The Washington Court of Appeals, on direct appeal of Petitioner's convictions, rejected Petitioner's claim that the jury instructions violated his right to be free from double jeopardy. The Court of Appeals explained its conclusion as follows:

> The constitutional guaranty against double jeopardy protects a defendant against multiple punishments for the same offense. State v. Mutch, 171 Wn.2d 646, 661, 254 P.3d 803 (2011). A double jeopardy claim is of constitutional proportions and may be raised for the first time on appeal. Id. We review double jeopardy claims de novo. Id.
>
> In cases where, as here, multiple identical counts are charged during the same time period, instructions that do not inform the jury that each crime requires proof of a separate and distinct act create the potential for double jeopardy. Id. at 663. To determine whether such flawed instructions result in a double jeopardy violation, we may look to the entire trial record, including the evidence, arguments and instructions. Id. at 664. "[I]f it is not clear that it was 'manifestly apparent to the jury that the State [was] not seeking to impose multiple punishments for the same offense' and that each count was based on a separate act, there is a double jeopardy violation." Id. (quoting State v. Berg, 147 Wn. App. 923, 931, 198 P.3d 529 (2008) (emphasis in original).
>
> Here, the jury was not instructed that each count required proof of a separate and distinct act. The instructions simply indicated that the State was relying on evidence of a single act constituting the alleged crime, not a separate and distinct act for each count. Accordingly, we review the trial record to determine whether it was manifestly apparent to the jury that each count was based on a separate act. Where the testimony, arguments, and jury instructions make manifestly apparent that the State was not seeking to impose multiple punishments for the same offense, there is no double jeopardy violation. State v. Land, 172 Wn. App. 593, 602-3, 295 P.3d 782 (2013).
>
> The evidence at trial established four separate acts of first degree incest. M.T. testified to two acts of intercourse during the first time it happened, before her 13th birthday. As the jury was instructed, only one of these acts supported the second degree rape of a child charge. Therefore, the other act was a separate act to support the one incest count alleged to have occurred between February 1, 2011 and February 7, 2012. M.T. also testified to three additional separate acts of intercourse: vaginal intercourse in the shower and two separate incidents of oral sex. In closing argument, the prosecutor clarified that the State was relying on each of these acts to prove the charged offenses:

REPORT AND RECOMMENDATION
PAGE - 9

> We've charged the defendant with a large time—basically a large time gap. Five years. The time frame that [M.T.] says she was raped. But during those time frames, we've charged him with five specific counts. And I'll go over them right now, so that when you're deliberating you don't forget which ones are which.
> The first count, Rape of a Child in the Second Degree, and the second count, Incest in the First Degree, those two counts go together. Those counts are for the first time that [M.T.] was raped when she was 12.
> The third count, Incest in the First Degree. That count is for the time that he raped her in the shower.
> The fourth count of Incest in the First Degree is for the time that she was down on all fours forced to give [Thomas] oral sex.
> And the next count of Incest in the First Degree is for the time that she was forced to give him oral sex for the first time. When he described to her what 69 was for the first time. And she ended up throwing up after he shoved his penis in her mouth.
> So to recap: Count I and Count II are the taking the virginity instance; Count III is for the shower; Count IV is for when she was down on all fours in her bedroom; And Count V is for the first time that he made her have oral sex.

The evidence, argument and instructions create clear distinctions between the three identically charged counts of first degree incest. Further, it is clear that it was manifestly apparent to the jury that each count was based on a separate act and the State was not seeking multiple punishments for the same offense. Accordingly, the lack of an instruction informing the jury that each count had to be based on a separate and distinct act did not violate Thompson's right to be free of double jeopardy. Mutch, 171 Wn.2d at 663-65; Land, 172 Wn. App. at 602.

Dkt. 8, Ex. 2 at 5-7.

Petitioner fails to demonstrate that this decision of the Washington Court of Appeals is contrary to, or involves an unreasonable application of, United States Supreme Court precedent. As Respondent correctly notes, Petitioner does not cite to any United States Supreme Court precedent holding that a jury instruction must include specific language requiring each count to rest upon a separate and distinct act in order to avoid double jeopardy concerns. Dkt. 7 at 14. Petitioner instead cites to Supreme Court precedent which supports the general principle that

REPORT AND RECOMMENDATION
PAGE - 10

multiple punishments for the same offense violate double jeopardy and that habeas relief is available where an instructional error rises to the level of a constitutional violation. Dkt. 4 at 13-14. Petitioner fails to demonstrate that he is entitled to relief under these general principles.

Petitioner identifies in his briefing two cases which he believes support his position that he is entitled to relief here based on the alleged deficiencies in the trial court's instructions, *Stoll v. Key*, 2017 WL 4803909 (W.D. Wash. Aug. 31, 2017), and *Middleworth v. Uttecht*, 2018 WL 11223433 (E.D. Wash. Aug. 2, 2018). The petitioners in both cases were charged with multiple sex offenses against children within the same charging period and, as here, the instructions failed to inform the jury that separate and distinct acts were required to convict on each count. *See id*. Both petitioners were denied federal habeas relief with respect to their double jeopardy challenges to the jury instructions. *See id*.

Petitioner attempts to distinguish these two cases from his case to demonstrate that his double jeopardy challenge to the instructions should succeed where those of the petitioners in *Stoll* and *Middleworth* failed. Dkt. 4 at 16. However, prior district court decisions do not constitute clearly established law for purposes of federal habeas review, and distinguishing these cases does not demonstrate that the Washington Court of Appeals' adjudication of Petitioner's jury instruction claim was contrary to or an unreasonable application of clearly established federal law. *See Glebe v.* Frost, 574 U.S. 21, 24 (2014) (per curiam) (Circuit precedent does not constitute "clearly established Federal law, as determined by the Supreme Court."); *Marshall v. Rodgers*, 569 U.S. 58, 64 (2013) (Circuit precedent may not be "used to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that this Court has not announced.")

REPORT AND RECOMMENDATION
PAGE - 11

      Petitioner also argues that the Washington Court of Appeals, in concluding that the lack of adequate jury instructions did not violate his right to be free of double jeopardy, improperly relied almost entirely on the prosecutor's closing argument during which the prosecutor described the separate and distinct acts the prosecution was relying on to support each individual count. Dkt. 4 at 17. Petitioner, in support of this argument, references the general principle that counsel's statements do not constitute evidence. *Id*. However, as noted above, in evaluating whether an instructional error rises to the level of a constitutional violation, a reviewing court must view the alleged error in light of the record as a whole. The Court of Appeals reviewed the jury instructions that were given, the evidence presented at trial, and the prosecutor's closing argument, and concluded that the lack of an instruction informing the jury that each count of first degree incest had to be based on a separate and distinct act did not violate Petitioner's right to be free from double jeopardy. This conclusion is consistent with, and amply supported by, the record before this Court.

      Petitioner presents an additional argument in his response to Respondent's answer that the Court will briefly address even though it has no impact on the outcome of this case. Petitioner argues that he should prevail in this action because Respondent has not shown Petitioner was not deprived of his right to avoid double jeopardy. Petitioner goes on to discuss a Washington Court of Appeals decision in a child sexual abuse case where the defendant prevailed on a double jeopardy challenge that was based on the trial court's failure to instruct the jury that its verdict must be based on separate and distinct acts for each charge. Dkt. 9 at 4 (citing *State v. Sanford*, 15 Wn. App. 2d 748 (2020)).

REPORT AND RECOMMENDATION
PAGE - 12

However, a state appellate court decision is no more relevant to this Court's analysis under 28 U.S.C. § 2254(d) than are the federal district court opinions referenced above. Moreover, it is not Respondent's obligation, on federal habeas review, to demonstrate the absence of a constitutional violation.[2] Rather, it is Petitioner's obligation to demonstrate that the state court's decision was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the United States Supreme Court. Petitioner has not done that here and, thus, his sole ground for federal habeas relief should be denied.

## CERTIFICATE OF APPEALABILITY

A petitioner seeking post-conviction relief under § 2254 may appeal a district court's dismissal of his federal habeas petition only after obtaining a certificate of appealability from a district or circuit judge. A certificate of appealability may issue only where a petitioner has made "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(3). A petitioner satisfies this standard "by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Under this standard, this Court concludes that Petitioner is not entitled to a certificate of appealability with respect to the claim asserted in his petition.

---

[2] Petitioner suggests in his argument that reliance on precedent from Washington State court decisions is appropriate, and he references the federal district court's decision in *Stoll* where, according to Petitioner, the court relied upon the Washington Supreme Court's decision in *State v. Mutch*, 171 Wn.2d 646 (2011), to resolve the petitioner's federal habeas claim. However, a careful review of the *Stoll* decision reveals that the portion of that decision referenced by Petitioner is actually the portion of the decision where the district court set forth, verbatim, the Washington Court of Appeals' analysis of the double jeopardy claim presented for review, and not its own analysis of the petitioner's claim of instructional error. Petitioner's reliance on *Stoll* is, once again, unavailing.

REPORT AND RECOMMENDATION
PAGE - 13

CONCLUSION

For the reasons set forth above, this Court recommends that Petitioner's petition for writ of habeas corpus be denied, and that this action be dismissed with prejudice. This Court further recommends that a certificate of appealability be denied. A proposed order accompanies this Report and Recommendation.

OBJECTIONS

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit within **twenty-one (21) days** of the date on which this Report and Recommendation is signed. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motions calendar for the third Friday after they are filed. Responses to objections may be filed within **fourteen (14) days** after service of objections. If no timely objections are filed, the matter will be ready for consideration by the District Judge on **December 3, 2021**.

DATED this 10th day of November, 2021.

*S. Kate Vaughan*

S. KATE VAUGHAN
United States Magistrate Judge